## Becker et al. v. Hughes et al.

*Louis E. Sensenich,* for Irwin Borough School District.

*P. K. McCormick* and *Robert W. Smith, Jr.,* for North Huntingdon Township School District.

*Carroll Caruthers* and *Harry L. Allshouse* for intervenors.

MCKENRICK, J., specially presiding (MCWHERTER, J., concurring), June 28, 1947.—Plaintiffs filed a petition against defendants under and pursuant to the terms of the Act of June 18, 1923, P. L. 840, and the amendments thereof, for a judgment and decree.

Plaintiffs are the duly qualified and acting school directors for the School District of the Borough of Irwin, Westmoreland County, Pa., and defendants are the duly qualified and acting school directors of the School District of the Township of North Huntingdon, Westmoreland County, Pa., these school districts being contiguous.

On February 6, 1915, the two school districts entered into a written agreement for the operation of a joint or union school to be known as the Norwin High

School, a copy of the agreement being attached to the petition. Pursuant to the terms of the agreement, the said school districts purchased land situate partly in the Borough of Irwin and partly in the Township of North Huntingdon and erected thereon a high school building to provide educational facilities for the students of both districts. Each of the districts held an undivided one half interest in the property. During the year 1936 the two school districts erected an educational building with the assistance of a public grant from the Public Works Administration of the Federal Government. On January 10, 1944, the main portion of the original high school was destroyed by fire. We have been informed and take it to be a fact that the insurance payable by reason of the fire loss aforesaid was equally divided between the two districts.

At a joint meeting of the school boards of the two districts on February 12, 1945, a resolution was presented by the Irwin Borough school board. The said resolution reads as follows:

"The Irwin school board proposes that the present contract be continued to July 1, 1946, and thereafter from year to year until the joint board can agree upon a building program that will provide ample facilities for the education of all high school students of both districts, at which time a term contract should be executed. Either board shall have the right to terminate the year to year contract by giving ninety days' written notice of its intention so to do prior to the beginning of the next contract year."

The said resolution was unanimously adopted.

At a meeting of the school board of North Huntingdon Township held on February 12, 1946, a resolution was adopted by the said board as follows:

"First: That the agreement between the North Huntingdon Township school district and Irwin Borough school district be terminated effective as of July 1st, 1946. Second: That a copy of this resolution be

sent to the Irwin school board and to the Department of Public Instruction."

This resolution was duly received by the Irwin school board on February 13, 1946.

At a joint meeting of the school boards held on June 4, 1946, a resolution was presented to the effect that Norwin High School be not discontinued. Upon vote being taken, the resolution was lost as it did not receive the majority affirmative vote of each board.

At a joint meeting of the school boards on July 12, 1946, the president of the township board informed the Irwin board that the township board would consider no proposition for the continued joint operation of Norwin High School by the districts, except upon condition that the Irwin school board agree to the termination of the contract of the joint operation of Norwin High School, and that the affairs of the joint high school be wound up and the assets liquidated during the next school year. In response to this, the Irwin school board, through its spokesman, stated: "The Irwin board takes the position that the action taken by the township board to dissolve Norwin did not constitute a dissolution, but in view of the position of the North Huntingdon board that it would constitute a dissolution, it would be impracticable to attempt joint operation of Norwin at the present time. The Irwin board will, therefore, establish its own high school, reserving the right to maintain that the Norwin contract is still in effect."

The twelfth paragraph of the original agreement of said school districts, dated February 6, 1915, reads as follows:

"Twelfth: This agreement shall be and remain in force for a period of thirty years from the date of the execution thereof, but the same may be cancelled and the said High School discontinued at any time by the majority vote of the directors of each of the said districts. In case of such cancellation the property in

North Huntingdon Township shall be taken by the School District of North Huntingdon Township, and the property in Irwin Borough shall be taken by the School District of Irwin Borough, and settlement made by the district so taking with other district upon a valuation which the districts, parties, hereto, may agree upon within ninety days after the cancellation of this agreement; or in the event of their being unable to agree within ninety days, as aforesaid, on a valuation of the said property, then the same shall be exposed to public sale after public notice for thirty days, and sold to the highest bidder. The proceeds of such sale shall be divided between the districts in the same proportions as they contributed to the original cost."

The petition for a declaratory judgment sets forth that there is a dispute and controversy between the school board of Irwin Borough and the school board of North Huntingdon Township as to the legal significance of the twelfth paragraph of the agreement, dated February 6, 1915, and as to the legal effect of the various resolutions adopted by said board. The petition further sets forth that in the event the contract between the two districts is terminated, the two boards cannot agree as to the matter of disposition of the property or assets owned by the districts and used for the joint operation of the high school. The petition prays that a rule be granted on defendants, school directors of the School District of North Huntingdon Township, requiring them to show cause why the declaratory judgment on the decree prayed for should not be granted; also that the court may enter its judgment or decree construing the said contracts, resolutions and board actions herein set forth or attached as exhibits, and to determine: (a) If the contract for the joint operation of Norwin High School by the School District of the Township of North Huntingdon and the School District of the Borough of Irwin has been legally terminated; (b) the procedure for disposing of

the assets jointly owned by the said school districts and used in connection with the operation of Norwin High School, in the event the court should determine said contract to be terminated; also for other or general relief.

An answer was filed to the said petition for declaratory judgment raising questions of law. It was set forth in said answer that there is a dispute as to the facts and circumstances in the case which would require the taking of testimony and the determination of issues of fact. The answer further sets up that petitioners have a complete and adequate remedy at law without resorting to the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840. It is further alleged in the answer that under the pleadings in the case, an order could not be made for the disposition of the land or school buildings or improvements because a period of 90 days following cancellation or termination of the agreement has not ensued, and that the parties are entitled within the period of 90 days to agree upon a valuation. The answer further sets up that the agreement, by its terms, expired on July 1, 1946, and that the period of 90 days for agreement as to valuation and the said further period of 30 days for sale had not expired when the petition was filed.

Said stipulations were entered into by counsel for the parties as follows:

"First: The school board of North Huntingdon Township and the school board of Irwin Borough each have operated independent high schools for their respective districts for the school year 1946-1947, the Irwin board reserving the right, however, to contest the legality of the action of the township board to terminate the 1915 agreement for the joint operation of the Norwin High School. Second: Since the operation of the independent high schools, each district has received accredited standing for its high school by

the Department of Education of the Commonwealth of Pennsylvania. Third: North Huntingdon Township High School has exclusive use of the buildings owned by the districts jointly and formerly used for Norwin High School. No agreement has been made between the districts providing for the payment to the Irwin School District of any specific rental for use and operation of the grounds, buildings and equipment of Norwin High School for the school year 1946-1947 or any subsequent term. Fourth: Irwin High School is housed in the public school building in Irwin Borough formerly used exclusively as a grammar school and Junior High School. After the fire and prior to the separation this building was used also by members of the freshman class of Norwin under agreement between the districts."

When the case was argued, we were advised that the court had before it all the facts necessary to the decision of the case, such facts being contained in the pleadings and stipulations to be filed later. We, therefore, assume that there are no disputed material facts not before the court. The first question for our consideration is whether the court has jurisdiction to enter a decree in the premises. The Uniform Declaratory Judgments Act specifically provides the procedure where there is a dispute as to the facts which would require the taking of testimony. As we view the case all the issues present relate to questions of the interpretation of the written contracts and the several resolutions hereinabove referred to. It is, therefore, as we understand it, purely a question of law that this court is called upon to decide. The Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, sec. 6, as amended by section 1 of the Act of May 26, 1943, P. L. 645, 12 PS §836, provides:

"Relief by declaratory judgment or decree may be granted in all civil cases where an actual controversy

exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case where the other essentials to such relief are present; but proceeding by declaratory judgment shall not be permitted in any case where a divorce or annulment of marriage is sought."

There is no statute which provides a special form of remedy to settle a contract dispute between two political subdivisions of the Commonwealth. Plaintiff has no adequate remedy by any common-law action. We believe that the jurisdiction of the court in the present proceeding has been definitely established: School District of New Castle v. Travers et al., 353 Pa. 261. This proceeding is, we believe, one entirely within the provisions of the Uniform Declaratory Judgments Act. There is an actual controversy between contending parties and litigation is inevitable; one party asserts a legal relation or right and the other challenges such asserted relation and right. There is no doubt

in our mind, without the citation of further authority, that petitioners have chosen the proper method to determine the controversy.

While it is not necessary to the decision of the point of law involved, we feel it profitable to outline briefly the controversy as it appears to exist and which has given rise to the present litigation. In 1915, the two contiguous school districts entered into a contract to establish a joint high school. The establishment and maintenance of a joint high school by two or more school districts is authorized by section 1801 to section 1808, inclusive, of the School Code of May 18, 1911, P. L. 309, 24 PS §1611 to §1618 inclusive. Section 1803 of the act provides, inter alia, that the several school districts intending to establish a joint school "shall first enter into and record in their respective minutes a written agreement, by and among themselves agreeing that such proposed joint school or department shall be established and maintained by the several districts, in such manner and proportion, and upon such terms as the several districts may then agree upon, and no change shall be made therein without the consent of each district first obtained, by the affirmative vote of a majority of the school directors thereof." Section 1802 of the act provides, inter alia:

"The title to any real estate, acquired for the purpose of establishing any such joint school or department, shall be held in the name of one or more of the districts establishing the same, as they may agree. No joint school or department shall be established without receiving the affirmative vote of a majority of the members of the board of school directors in each district establishing the same." Sections 1804, 1805, 1806, 1807 of the act provide for the meeting of the boards, the election of teachers and the powers and duties of the joint boards. Two of the powers that are required to be acted upon by the joint boards which are material in

this case are "the purchasing of the necessary site and the employ and fixing of the salary of the teacher or teachers." Section 1808 of the act provides:

"The several school districts establishing any joint school or department may, at any time by a majority vote of the school directors of their respective districts, discontinue any such joint school or department, and the property belonging to the same, when discontinued, shall, unless otherwise agreed upon by the several districts, be disposed of and distributed to and among them in the same proportion as it was originally contributed."

It was under these articles of the School Code that the contract between the two contiguous districts was entered into. So far as we have been advised, for nearly 30 years, the joint high school was operated by the joint board and the advantages accruing to the several districts from such joint high school were enjoyed by the students eligible to attend such school. In some manner, not necessary to discuss here, the relations between the two school boards became strained and the operation of the school was not as harmonious and coöperative as it was during the early period of the contract. Apparently the fire which occurred in 1944 and the lack of coöperation in restoring the main school building brought about further dissension in the relations of the school boards. It will be noted that the contract entered into by the two districts provided for an operative period of 30 years from the date of the contract. When the 30 years' period was about to expire, one of the school boards proposed that the contract be continued or extended for an additional period of time. This arrangement was satisfactory, apparently, to both sides, but within a year, the township board expressed its dissatisfaction with the joint control. As a result of the dissension among the school directors and the controversy arising among

the patrons of the school, each district established its own high school. It is to be noted that each of these high schools has been accredited by the Department of Public Instruction at Harrisburg and there is nothing on the record to indicate that the quality of the teaching has been impaired by the separation. There are some matters in controversy which we believe are not material to decision of the case. We cannot, in our view of the law, go into the relative merits of the controversy between the school boards. Evidently, the dissension and disagreements are deep-seated and anything we may do will not ameliorate the conditions which necessarily have arisen because of the controversy which is not without public interest and concern.

Paragraph 12 of the agreement, quoted in full hereinabove, is the paragraph of the agreement which we must interpret in connection with the resolutions from time to time offered. The agreement is to be in force for a period of 30 years from the date of its execution, but the same may be canceled and the said high school discontinued at any time by the majority vote of the directors of each of the said districts. With the exception of the clause "Period of thirty years", the remainder of the first section of paragraph 12 is identical in meaning, though couched in different language, with section 1808 of the act, 24 PS §1618. Evidently, the person who wrote the agreement had before him or at least had in mind section 1808, because the meaning is the same. However, the author of the contract limited the period that the joint high school was to be in operation to a period of 30 years and made no provision for an extension of time after the 30 years had expired, and the school has been in operation during the required period under the contract. It will be noted, however, that the second section of paragraph 12 also follows section 1808 of the act insofar as it relates to the disposition of the joint property in the event the

joint school is discontinued. We must also assume from the reading of the section of paragraph 12 that the author had before him or at least in contemplation the latter part of section 1808. Did the parties to the agreement have the right to limit the period of operation of the joint high school to 30 years or any other definite period? There is nothing in the act of assembly, as we read it, that provides for any specific term for joint schools. The act merely authorizes an agreement for the establishment and operation of joint schools and leaves the question of the discontinuance of the schools to the action of successor boards. This must be true because section 1808 of the act provides in terms that "by a majority vote of the school directors of their respective districts", the high school may be discontinued. The same thought is expressed in the first section of paragraph 12 of the agreement. As we read the act of assembly and construe paragraph 12 of the agreement, the two school boards, by affirmative action of the majority of the directors, could discontinue the Norwin School at any time, regardless of whether the 30-year period had expired or not. Since it did continue for more than 30 years, we are not concerned with the 30-year provision, except insofar as it may have contributed to the legal controversy which is before us. As we understand the contentions of the parties, both boards evidently were under the impression that it required joint action to discontinue the high school during the 30-year period, but that after the expiration of the 30-year period, either could, without the consent of the other, discontinue the joint program. This is evidenced by the resolution of February 12, 1945, in which they agreed that either board "shall have the right to terminate the year to year contract by giving ninety days written notice of its intention so to do prior to the beginning of the next contract year". It will be noted further that in paragraph 12, the disposition of the school property is pro-

vided for in the event that the joint arrangement should be canceled, and that cancellation, of course, would have to be by majority vote of the directors of each of the districts.

Section 1808 of the act which we are discussing is plain and can be easily understood. It is the only provision in the School Code that we have been able to find that provides for the discontinuance of a joint school. Clearly, a reading of the section discloses that the only way that a joint school can be discontinued, canceled, or terminated is by a majority vote of the school directors of each district. There is no limitation of time in this section and the act does not read in effect that mutual cancellation is required during some specific term of years, but after the expiration of that specific term, either of the parties may cancel or discontinue the joint arrangement at their convenience. The act of assembly in our opinion means exactly what the language of it says, and there is no ambiguity or uncertainty in the language. In the first place, the section says that the discontinuance of the joint school may be at any time and the discontinuance, if by joint action, is not to be postponed to the end of any specified term of years. It is our opinion that the insertion of the clause "period of thirty years" is a mere surplusage and cannot limit the operation of the act of assembly. The act, the section of which is under discussion, does not imply that one of the joint school districts can withdraw without the consent of the other merely because they have conducted the operation jointly for the term limited in the contract. As we view the matter, the resolution of February 12, 1945, was an attempt to extend the term of 30 years into the future for the mutual advantage of the two districts. The action, we think, was commendable and entirely within the rights of the contracting parties. However, when they attempted by resolution to permit either one of

the parties to discontinue the joint high school in the future, they ran counter to the clear terms of the act, which requires a majority vote of the directors of both districts and not merely the unilateral decision of one board against consent of the other. School districts are subdivisions of government but they are only creatures of the legislature. It is not necessary to cite authority for the elementary proposition that school districts and the directors thereof have no greater powers than are given to them by the statutes creating the districts and providing for their government. The authority of the school district to act through its directors must be found in some statute and there is no statute that permits one member of a joint school district to withdraw from the joint arrangement after it has been established. It may be argued that this results in hardship and inconvenience. We agree with the argument because in this particular case it is evident that the two school districts have not, cannot, and will not live in harmony and approach their problems in a spirit of sympathetic coöperativeness. That, however, must be corrected by the legislature. Irwin Borough has its own high school; North Huntingdon has its own high school and neither of the districts are paying any particular attention to the joint high school and, as a result of this, the public and the students affected by the situation must suffer. However, that is no concern of ours and we cannot arrogate to ourselves the power to settle a controversy, not of our making, because our sympathies are extended to one group or to the other. So long as the 30-year provision was recognized by the two boards, no controversy existed. Perhaps each group felt it was bound for the 30-year period and did not assert any right to discontinue during that time without the joinder of the other. If it is to be held that during the 30-year period joinder was necessary, but that after the 30-year period either could act, we

would have an anomalous situation. The parties would bind themselves to observe the law which governs the establishment of joint high schools for any specific period, 3, 5, 10, 15 or 30 years, but after the expiration of that time they could make their own law and become exempt from the operation of the statute. In our view, there is no way by agreement or otherwise, that either of the parties may discontinue without consent of the other. We say this because the statute expressly provides in terms that "several school districts establishing any joint school may at any time by a majority vote of the school directors of their respective districts, discontinue any such joint school". There is nothing in this record to indicate that the Irwin Borough school board by a majority vote of its directors elected to discontinue the joint school. On the other hand, the Irwin school board has contended and still contends that the action of the township school board was without avail. We cannot construe the fact that the Irwin board established a high school of its own as a substitute for the official board action required by law. Whether the Irwin board, by establishing its own high school under the circumstances, violated the thirteenth paragraph of the agreement is not the issue in this case. The township established its own high school likewise, but that, in our opinion, does not alter the situation. It seems strange to us that the original parties to this proceeding have overlooked, or at least have failed to stress, section 1808 of the School Code which we believe governs the law in this case. It may be that we may have misconstrued the legal aspects of the controversy and have attached greater importance to section 1808 than is necessary. We are at a loss to understand how joint schools can be organized, established, and operated under the provisions of the School Code, comply in the operation and management of the institution with the mandate

of the School Code and yet by attempted contract seek to escape the only provisions of the School Code which relate to the discontinuance of joint schools. No power is given to a school board to make a contract, however advantageous to the parties, if that contract is contrary to the express provisions of the statute under which the joint school is created.

At the cost of repetition, we again affirm that under the School Code as declared in section 1808, affirmative majority vote of the school directors of each district is necessary before any joint school may be discontinued. Such action was not taken in this case and we are of the opinion that there was no discontinuance, termination or cancellation of the joint school contract and therefore the status of the contracting school districts remains as it was and we are further of the opinion, as we have already indicated, and we repeat, that the 30-year limitation provided in the contract is immaterial insofar as it seeks to affect the mandate of the statute that both boards must agree to a discontinuance of the joint school. This view of the law makes it unnecessary for us to go into the question of the distribution of the property. Until the contract between the districts is legally discontinued, there is no distribution of the joint property. We, therefore, enter the following

### Decree

Now, June 28, 1947, it is ordered, adjudged and decreed that the contract of February 6, 1915, is in existence and effect and the Norwin High School is under the jurisdiction, control and management of the joint boards of the School Districts of Irwin Borough and North Huntingdon Township, and judgment is herein entered in favor of plaintiff and against defendants, the costs of this proceeding to be paid by all parties hereto jointly.